THE TOWN OF WILMINGTON *v.* THE TOWN OF SOMERSET.

*Pauper.*

A pauper who had a legal settlement in the town of Somerset and who was, at the time of the annexation of one part of that town to Wilmington and another part to Stratton, maintained as a pauper by Somerset, and hired to be kept as such in the town of Wardsboro, was *held* to be an *absent person* within the meaning of the 9th clause of the 1st section of the 17th chapter Compiled Statutes, (General Statutes, p. 132.)

Such pauper's settlement was held to be in Wilmington after such annexation, because her "last dwelling place or home" in Somerset before becoming a pauper of that town, was in that part of Somerset which was annexed to Wilmington, notwithstanding, after she became a pauper she was not kept in that portion of the town, but for awhile in another part of Somerset, and afterwards in Wardsboro.

A pauper, while supported as such, has no "home or dwelling place" within the meaning of the statute, (Comp. Stat. chap. 17 sec. 1, clause 9.)

APPEAL from an order of removal of one Thankful Sawtell, a pauper, from the town of Wilmington to the town of Somerset. Plea, that the pauper was unduly removed, and trial by the court at the September Term, 1860, REDFIELD, CH. J., presiding, upon the following agreed statement of facts :

"It is agreed between the parties that the pauper, Thankful Sawtell, was born in Brattleboro in 1792, and with her father, Richard Sawtell, removed to Somerset in 1795.

That Richard Sawtell, the father, came to reside in Somerset on that part of the town annexed to Wilmington by the act of annexation passed November 2nd, 1858, and resided there until his decease.

That Thankful Sawtell always resided in that part of the town annexed to Wilmington until after she became a town pauper.

That she was occasionally assisted by the town of Somerset from 1832 to 1844, when she became a town pauper and was wholly supported by the town.

From 1844 to 1855 she was supported by the town of Somerset at different places upon said territory annexed as aforesaid to Wilmington. In the spring of 1855 one King contracted to

support and maintain her, and continued to support and maintain her until May, 1859.

In December, 1858, the overseer of Somerset paid King for supporting and maintaining her up to January 1st, 1859, at which time the act of the General Assembly annexing a part of Somerset to Wilmington, and a part to Stratton, took effect.

Thankful Sawtell remained with King until May 1859, when she wandered from Wardsboro, where King was then residing, and had resided for the year preceding, into that part of Wilmington annexed from Somerset, from whence she was removed by the order and warrant of removal, appealed from, to Somerset, 9th June, 1859.

It is further agreed that Richard Sawtell and Thankful Sawtell both gained a settlement in Somerset, and gained such settlement while residing in that part of Somerset annexed to Wilmington by the above mentioned act of the legislature.

It is further agreed that King in 1855, when he contracted to support Thankful Sawtell, resided in Somerset in that part of the town annexed to Stratton, and that he removed to Wardsboro in the spring of 1858.

Upon these facts, the county court decided that the pauper was duly removed, to which the defendant excepted.

*Chas. K. Field*, for the defendant.

*S. P. Flagg*, for the plaintiff.

PIERPOINT, J. The important question in this case depends upon the construction of the 9th clause of the 1st section of the 17th chapter of the Compiled Statutes, (General Statutes, p. 132,) relating to the settlement of paupers, in connection with the facts stated in the exceptions. In said clause it is provided that "upon the division of any town, or the annexation of a part of one town to another town, every person having a legal settlement therein, but being absent at the time of such division or annexation, and not having acquired a legal settlement elsewhere, shall have his legal settlement in that town, wherein his

last dwelling place or home shall happen to fall, upon such division or annexation." It seems to have been the intention of the legislature by this enactment, to establish a definite rule, by which the controversies might be settled, that would be likely to arise upon the division of a town, or the annexation of a part of one town to another, as to the legal settlement and future support of the class of persons referred to. The rule is an arbitrary one, like all the laws relative to the support of paupers, consequently but little aid, in its construction, can be derived from the consideration of any principles of equity, or justice, that may be supposed to exist as between the several towns to be affected by it.

This statute makes no reference to the effect of such division or annexation upon those persons whose "dwelling place or home" is in the divided town, or in the annexed portion of a town, at the time of such division or annexation; but such persons are left to the operation of the general principle applicable to such cases. The rule established in such cases in the neighboring states, (as shown by the adjudged cases to which we have been referred in the argument,) whose pauper laws are similar to our own, seems to be, that such persons stand in the same relation to the town to which the territory in which they lived was annexed, as regards their settlement therein, as they occupied to the town from which such territory was taken, there being no express statutory provision on the subject. Probably a similar rule would be held to prevail here, but that point we are not now called upon to decide.

That part of the statute now under consideration applies only to that class of persons who, having a legal settlement in the town that is divided, or a part of which is annexed to another, are *absent* when the division or annexation takes place; and of such persons it is declared that they shall have their legal settlement in that town wherein their last dwelling place or home shall happen to fall. This statute will admit of no other reasonable construction than that the towns referred to, are those whose territorial limits are altered by such division or annexation; the indirect purpose was, to establish a basis upon which the settlement of this class of persons and the consequent burden of their support, if necessary, should be distributed between

Wilmington *v.* Somerset.

such towns after their boundaries are so changed, and that is accomplished by fixing their settlement in the one town or the other, according to the place where the last dwelling place or home of the absent person shall be found to have been.

It appears from the agreed settlement of facts, that the pauper, Thankful Sawtell, had a legal settlement in Somerset, at the time a part of that town was annexed to the town of Wilmington, and that she always resided and had her home in that part of the town of Somerset that was so annexed to Wilmington, until 1844, when she became a town pauper and was wholly supported by the town. From this time forward the town of Somerset continued to support the pauper, sometimes in Somerset and some of the time out of said town, until the 1st of January, 1859, when the act annexing a part of Somerset to Wilmington took effect. At that time she was living with one King in the town of Wardsboro, who was supporting her there for, and as a pauper of, the town of Somerset.

Upon these facts the question arises whether the pauper on the first of January, 1859, was such an absent person as is referred to in the statute, so that by operation thereof her legal settlement became fixed in that town within the then limits of which her last dwelling place or home was.

It is well settled that while she was being supported by the town of Somerset, she could not have a residence in any other place within the meaning of that term, as used in the statutes regulating the settlement of paupers. Her living in any other town, no matter for how long a period, would not give her a settlement therein. Her residence in contemplation of law would still be in the town from which she derived her support. She could not even " *come to reside* " in any other town while so supported there by the town of Somerset, so as to be made the subject of an order of removal.

Neither can such pauper, while in the charge of the overseer of the poor, and supported by the town of Somerset, have a " dwelling place or home," within the meaning of those words as used in that part of the statute now under consideration.

The dwelling place or home here referred to is evidently one that the pauper has obtained, procured, or occupied, of his own will, or through some voluntary agency of his own, or that of connections or friends, a place of abode *that* can properly be called his, in the selection or enjoyment of which he may be supposed to have been a free agent, or at least one that he was allowed to occupy and enjoy as his home, independent of the *compulsory charity* of the town.

Paupers while in charge of the overseer of the poor, or being supported by the town, have no choice as to the place where they live. They abide where the town provides a place. They are wholly subject to the will and control of the overseer of the poor in this respect. There is no particular place that they can call *their* home. If one of the paupers of Somerset had been kept by the town on that part set to Wilmington, or if they had all been kept there in a poor house procured by the town for that purpose, the annexation would not transfer such pauper or paupers. Such a case then would be no such connection of the paupers with the territory by virtue of a residence there, or as being inhabitants of it, as is necessary in order that a transfer of the territory should operate to transfer their legal settlement in Somerset, or to transfer them as inhabitants of such territory, to the town of Wilmington. If their settlement is transferred at all, it must be by virtue of some other principle.

This point is fully decided in several cases in Massachusetts and Connecticut, which have been referred to in the argument, and it is not necessary to refer to them again here.

In this case the pauper was not upon the territory transferred, or within the town of Somerset, at the time of annexation, but was in fact in the town of Wardsboro.

That the pauper was absent from the town of Somerset on the 1st of January, 1359, in fact, must be conceded, but it is said that being a pauper and supported by the town, at the time, she is to be regarded in law as in the town and not absent, and that the statute has reference only to those persons who, having a legal settlement in a town, are absent therefrom, under such circumstances that a new settlement might be gained

in another town by remaining therein a sufficient length of time. There is nothing in the statute indicating an intention to make any such distinction, or to show that the word " absent " was used in a limited or restricted sense, or that those who had become paupers were not subject to its operation, as well as those who might subsequently become so. If it had been the design of the legislature so to restrict its operation, it seems to us it would have been expressed, by some words of limitation, but instead of that, the language is of the most general and comprehensive character. " Every person having a legal settlement therein " are words that include those who are chargeable as well as those who are not. The words " not having acquired a legal settlement elsewhere " do not qualify the former words. In fact, that expression is wholly inoperative, for if a settlement had been gained elsewhere, then the former settlement was thereby lost, and the person would have no legal settlement in the divided town, and of course would not be within the statute at all.

The legislature by using the general word " *absent* " without qualification, to designate the class of persons referred to, and the words " *dwelling place or home*," to designate the place where the settlement is declared to be, seem to have intentionally avoided the use of all those words that have been restricted in their meaning in the construction of the laws relative to the settlement of paupers, and to have put the residence of the persons referred to, as regards their settlement, upon the broad basis, that all such persons who are out of the town at the time its territory is set off, living elsewhere and having no home within it, in fact, shall have their settlement in that one of the two towns within whose limits the place of such person's last dwelling or home shall be found, and that without reference to the place where such person resided in said town when the settlement was gained, that being a matter wholly immaterial, the sole object being to divide the burden of supporting the paupers of the town whose limits have been contracted, as between such towns and the adjoining town, whose limits by the same process have been enlarged, so far at least as the class of persons referred to are concerned.

---

In this view of the statute, the settlement of the pauper, in this case, became fixed in Wilmington by operation of the act of annexation.

The judgment of the county court is reversed, and judgment entered that the pauper was unduly removed, and that the defendants have their cost.